24 C.C.P.A.(Patents)

## MYERS v. ROETHEL.

### Patent Appeal No. 3815.

Court of Customs and Patent Appeals.

June 7, 1937.

Daniel G. Cullen, of Detroit, Mich., for appellant.

Dike, Calver & Gray, of Detroit, Mich. (Elmer J. Gray, of Detroit, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared in the United States Patent Office between the application of John H. Roethel, appellee, which application was filed March 21, 1931, and embraced the subject-matter of window control mechanism, and the application of Hubert A. Myers, involving the same subject-matter, and which was filed January 29, 1931. This interference was twice redeclared, first, to include the application of Burton S. Floraday, filed February 1, 1932, and, second, the application of Stanley W. Nicholson, filed August 15, 1932.

As the interference comes to us, it has but one count, which is as follows: "1. In a window regulating mechanism, the combination of a horizontally movable member adapted to be connected to a window, a support, a gear rotatable on said support and having a projecting arm pivoted to said member for moving the window vertically, and a second arm parallel to the first arm and pivoted to the support and member at vertically spaced points equidistant from the axis of rotation of said gear and the pivot of the first arm to said member."

The Examiner of Interferences awarded priority to John H. Roethel, the junior party, and this decision was affirmed by the Board of Appeals. The parties Floraday and Nicholson are not here involved. The party Myers only has appealed.

Both parties took testimony, and a voluminous record has been made bearing on the subjects of conception and reduction to practice. No other questions are presented except these.

The invention in issue is a window regulator, or glass lifter, substantially as set forth in the count. It will be observed that the count does not recite that the invention shall be confined to automobile windows, but might be applicable to any window. The underlying plan is the lifting of the glass in a window, particularly an automobile

window, by two parallel metallic pivoted arms, each attached to a support and a lifting member in such a way that the glass window will be raised vertically and be retained horizontally while being raised, so that the window will not tip or jam while being raised or lowered. Each of the parties, particularly Roethel, had a clutch under consideration in connection with this device when the field was first entered, but such clutch does not enter into this controversy, and is not within the scope of the count of the interference.

There is also no controversy about the fact that the count of the interference reads upon both applications herein. The only controversy is about when the respective parties conceived the invention and reduced the same to practice.

John H. Roethel, the junior party, was a native of Austria and came to the United States in 1914, being now a citizen of the United States. Beginning in 1920, he ran an automobile repair garage in Brooklyn, N. Y. He remained in Brooklyn until 1930, when he removed to Detroit, Mich., and thereafter worked for the Ferro Stamping & Manufacturing Corporation. While in Brooklyn he specialized in wrecked motor repair work, and began to work at window regulators in 1922. He states that he made a parallel arm regulator first in the fall of 1927 and again in 1928. He completed a parallel arm regulator and exhibited it to others in November, 1928. The regulator on that device was of the same construction as that now before us, but it had, in addition, a clutch by means of which the glass could be lowered without revolving the crank, and could be released and forced back upward by a spring.

During this work in Brooklyn in 1928, a model was made, in evidence here as Exhibit 1, which obviously satisfies the count of the interference. In it are two parallel arms, pivoted on the support at one end and pivoted on the glass supporting member at the other end "at vertically spaced points equidistant from the axis of rotation of said gear and the pivot of the first arm to said member."

This device was installed in a wooden form and fitted with a handle and operated by hand, repeatedly and with success. It was not installed in an automobile door.

Criticism is made of Roethel's corroborating testimony. It is said that this testimony was confused and contradictory and should not be given credence. There were seven of these witnesses. Some of them were foreign-born and spoke English imperfectly. The cross-examination, also, was long and involved and repetitive. Roethel, for instance, was subjected to a cross-examination which covers 112 printed pages of the record. However, the very unlettered character of some of the witnesses, and the nature of the answers given in their involved cross-examination, is convincing of the veracity of their statements. A significant fact is that Dr. W. J. Kriete, a man of learning, testified that he was so much convinced by the demonstration of the device by Roethel that he wanted to invest $25,000 in financing the new invention.

We are convinced that Roethel, in 1928, had conceived the invention here in issue, had constructed a device embodying the same, and had subjected it to a shop test as heretofore stated.

The appellant insists vigorously that such shop test did not constitute a reduction to practice within the decisions of the courts, and cites Payne v. Hurley, 71 F.(2d) 208, 21 C.C.P.A.(Patents) 1144; Jobski v. Johnson, 47 App.D.C. 230; Fageol v. Lyon, 53 App.D.C. 361, 290 F. 336; Urschel v. Crawford, 73 F.(2d) 510, 22 C.C.P.A. (Patents) 727; and others.

As we view the matter, it will not be necessary to pass upon whether the reduction to practice of 1928 was sufficient.

When Roethel went to Detroit in September, 1930, he took his Exhibit 1 with him and soon thereafter showed it to Clarence C. Fairbank, sales manager of the Ferro Stamping & Manufacturing Corporation, who directed him to make another model. This was done and finished on October 9, 1930. This is in evidence, was stamped as of the date of completion, and embraces the subject-matter of the count. A drawing of this regulator had previously, on September 29, 1930, been prepared, and it is in evidence. Two days after the completion of this regulator, known as Exhibit 2, it was put into a testing machine. The testing consisted of installing it in an automobile door, after which it was put into a machine, in which, by means of a rack and guide, the window was turned up and down "approximately about six thousand times." This testing was completed about October 15, 1930, and was satisfactory.

Roethel and his company then proceeded to attempt to work out a clutch for windows, and continued this until the application was filed on March 21, 1931.

As we view the matter, the test to which the Roethel device was subjected in 1930 was sufficient for a reduction to practice.

It is contended by the appellant that the tests made by the appellee of his Exhibit 2 were not a sufficient reduction to practice; that the devices must be tested in automobile doors, where they will be subjected to the bumps and roughness usually experienced by such vehicles. To support this theory, cases like Payne v. Hurley, supra, involving spark plugs, are cited. That case collates most of the recent cases on that subject. It seems to be the theory that the rule stated in the Hurley Case, supra, is applicable to all automobile appliances or accessories. However, such is not the case, as appears from Wilson et al. v. Sherts et al., 81 F.(2d) 755, 23 C.C.P.A.(Patents) 914, where laminated safety glass is involved, Smith v. Place, 84 F.(2d) 196, 23 C.C.P.A. (Patents) 1260, where trim panel was involved, Creveling v. Jepson, 44 App.D.C. 445, where electric distribution systems in car lighting systems, not necessarily automobile, were involved, Schwalbenberg v. Dowell, 54 App.D.C. 177, 295 F. 998, involving cooling systems for automobiles, and Aufiero v. Monnot, 46 App.D.C. 297, where hand actuated alarm devices or mechanical horns were involved.

In the last case above cited, the count of the interference did not define the invention either as an automobile horn or as a device adapted for use on an automobile. The same is true in the case at bar. The count of the interference does not define the window regulator as one to be used on an automobile window, but upon any window where it might be used.

Therefore, whether Roethel be allowed a reduction to practice as of 1928, he is, at least, entitled to a reduction to practice of not later than October 15, 1930.

The party Myers, in his preliminary statement, contends that he is entitled to a date of reduction to practice as of November 15, 1930. Appellant filed a brief in the Patent Office which is here, by stipulation of the parties, as a physical exhibit. The Examiner of Interferences calls attention to the fact that counsel, in said brief, concedes that the regulator, known here as Exhibit G–6, was "constructed either during the latter part of November or during the month of December," which would follow Roethel's 1930 date of reduction to practice.

The party Myers filed a preliminary statement in which he states that he "conceived the invention set forth in the declaration of interference during the forepart of January, 1929." On May 10, 1934, he filed a motion to amend this preliminary statement. As to this motion to amend, the Examiner of Interferences says: "Myers has moved to amend his preliminary statement to allege an earlier date of reduction to practice. This motion was filed after Roethel had taken testimony and could, therefore, be granted only on a most convincing showing. The reason given in support of the motion is that Myers did not realize how broad an interpretation might be given to the count until Roethel took his testimony. This is purely a mistake of law and it is well settled that such a mistake does not warrant the amendment of a preliminary statement (Dalgren v. Crocker, 98 O. G. 2586, 1902 C.D. 107; Miller v. Wallace, 131 O.G. 1689; Fowler v. Boyce, 108 O.G. 561). The motion must accordingly be denied. It further appears, as indicated above, that the device relied on as the basis for the amendment does not support the count. This fact affords a further ground for the denial of the motion."

We are unable to see wherein any error was committed in the denial of said motion.

Myers first began to experiment with parallel arm window regulators in the latter part of 1928. In the latter part of July or first part of August, 1930, he first laid out on paper his idea for a two-armed regulator. After this, several regulators were made up by him, or under his direction. These are in evidence and are known as G, G–1, G–2, G–3, G–4, and G–5. The model known as G–6, was the first one which conformed with the drawing in Myers' patent application here involved, and was made in the latter part of November or first part of December, 1930.

The appellant sought the benefit of the dates of his work on Exhibits G to G–5, inclusive, in his proof of conception and reduction to practice. We agree with the tribunals of the Patent Office that these exhibits do not satisfy the count of the interference, and that Exhibit G–6 is the first that embodies the issue here.

The distinctions between the Myers regulators G to G–5, inclusive, and the count of the issue, are well set out by the statement of the Board of Appeals, as follows: "The type of device embodied in Myers' Exhibits G to G–5 has two parallel arms, one

of which is rigidly attached at its inner end to the gear sector and is pivotally connected at its outer end to the window supporting member and the other of which is a rack bar having teeth at each of its ends in engagement with pinions connected to the support on which the gear is mounted and to the horizontally movable window supporting member. Myers contends that as the arms are swung upwardly and downwardly by operating the gear sector the rack bar at each of its ends turns about the circumference of a pinion and since the latter is rigid with the support or the horizontally movable member as the case may be, there is pivotal connection between the rack bar and pinion. This contact between the rack bar and pinion is in the nature of a rolling contact, the point of turning constantly shifting about the circumference of the pinion instead of being an axis which is fixed with respect either to the pinion or the rack bar. We believe the language employed in the count is not fairly susceptible of such interpretation as to be readable on this type of device."

We agree with this statement.

Roethel, being the first to conceive and the first to reduce to practice, is entitled to priority.

The decision of the Board of Appeals is affirmed.

Affirmed.