515 F.2d 385
 169 U.S.App.D.C. 154
 MICROWAVE COMMUNICATIONS, INC. and MCI Telecommunications
Corporation, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
American Telephone and Telegraph Company et al., Intervenors.
 No. 73-2051.
 United States Court of Appeals,
District of Columbia Circuit.
 June 27, 1974.
 
 Richard J. Flynn, Chicago, Ill., John E. Haley, Washington, D. C., and Jules M. Perlberg, Chicago, Ill., were on the pleadings for American Tel. and Tel. Co., intervenor.
 Gordon P. MacDougall, Sp. Asst. Atty. Gen. for the Com. of Pa., was on the pleadings for the Com. of Pennsylvania, intervenor.
 Michael H. Bader and William J. Byrnes, Washington, D. C., were on the pleadings for Microwave Communications, Inc. and MCI Telecommunications Corp., petitioners.
 Joseph A. Marino, Associate Gen. Counsel, Philip V. Permut, Counsel, and Howard E. Shapiro, Atty., Dept. of Justice, were on the pleadings for the F. C. C. and the United States, respondents.
 Before ROBINSON and ROBB, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 This case is before us on the motion of intervenor American Telephone and Telegraph Company (AT&T) to dismiss the petition for review herein on the ground that it was not timely filed. The petition solicits reconsideration by this court of four orders of the Federal Communications Commission after the Commission denied applications seeking rehearing of three of them.[1] The novel and potentially important issue generated by the motion is whether the statutory period for filing a petition for review of an order refused rehearing by the Commission[2] commences on the date a news report of the order is issued by the Commission's Information Office or on the date the text of the order disallowing rehearing is released to the litigants. Resolution of this question hinges entirely upon the meaning of the term "public notice" as used in the statute delineating that period,[3] a matter we are called upon to carefully explore.
 
 
 2
 * Microwave Communications, Inc. (Microwave) and MCI Telecommunications Corporation (MCI) filed a petition in this court for review of four orders promulgated by the Commission in a rate investigation.[4] The first two orders adjudicated a phase of the proceeding,[5] the next order implemented the first two,[6] and the fourth, adopted August 2, 1972, denied all applications for rehearing of the first three.[7] With a single exception, the orders were accompanied by written decisions.[8]
 
 
 3
 On August 3, the Commission's Information Office issued a report disclosing the action taken in the order of August 2. At the head of the report in large type was the word "News," followed in smaller type by the Commission's name and address, and then by the words "Public Notice." The report bore a number, the style "Action in Docket Case," and a headline announcing the denial of the petitions for rehearing. The report then described generally the nature of the proceeding, the parties' contentions and the Commission's rulings therein, and stated that by memorandum opinion and order on August 2 the Commission had acted adversely on the requests for rehearing.[9] The text of the order refusing rehearing and its accompanying opinion did not, however, become available either to the parties or the public until August 10. The petition for review now under attack was filed on October 5.
 
 
 4
 A petition for review of an order which the Commission declines to rehear must be filed within 60 days after "public notice" of the order or orders disposing of all petitions for rehearing.[10] In support of its motion to dismiss, AT&T argues that the 60-day period began to run on August 2, the date of the news report, with the result that the petition for review came three days too late.[11] Petitioners, on the other hand, contend that the period is to be measured from August 10, the date on which the order and opinion disallowing rehearing were released in full text. The Commission and intervenor Commonwealth of Pennsylvania support petitioners' position.[12] We agree with that position and accordingly deny the motion.
 
 II
 
 5
 By virtue of 28 U.S.C. § 2342(1) (1970), the federal courts of appeals possess "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by" Section 402(a) of the Communications Act of 1934.[13] Section 402(a) encompasses all reviewable orders except those in the special categories none obtaining here made appealable by Section 402(b) of the Act.[14] Jurisdiction to review Section 402(a) orders must be invoked by a petition for review,[15] and the petition must meet specified requirements,[16] one of which is timeliness of filing.[17]
 
 
 6
 On the latter score, it is provided that "(a)ny party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies."[18] Section 405 of the Communications Act provides, however, that the party may petition the Commission for a rehearing,[19] and that if he does so "(t)he time within which a petition for review must be filed in a proceeding to which section 402(a) . . . applies . . . shall be computed from the date upon which public notice is given of orders disposing of all petitions for rehearing filed with the Commission in such proceeding or case . . . ."[20]
 
 
 7
 So, but for the petitions for rehearing presented to the Commission in this case, petitions for judicial review of the questioned orders[21] would have had to be filed within 60 days following the respective dates of "entry" of those orders. Because, however, administrative reconsideration was timely sought, the filing period was extended to the sixtieth day after "public notice (was) given" of the Commission's opinion and order of August 2, 1973, denying rehearing.[22] It is beyond cavil that these limitations are jurisdictional[23] and unalterable.[24]
 
 
 8
 The news report of the August 2 decision and order was released on August 3. The texts of the decision and order became available on August 10. The challenged petition for review was filed on October 5, in time if the 60-day period commenced on August 10 but not if it ran from August 3. Our jurisdiction thus depends upon which of the two was the date on which "public notice (was) given."[25] That date, we hold for a number of reasons,[26] was August 10.
 
 III
 
 9
 To begin with, statutory language defining key elements of the legislative scheme for judicial review of Commission orders suggests strongly that "public notice" of an order "is given" only when the complete text of the order and any accompanying decision becomes available to the litigants. We may look first to Section 2344,[27] which pertains to petitions to review original orders as distinguished from orders granting or denying rehearing and which sets the petitioning period at 60 days after "entry" of the order.[28] That section specifies that "(o)n the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules."[29] The obvious intendment of this requirement is information to the parties far beyond that imparted merely by entry of the order on the administrative record.[30] And not only are the Commission's regulations devoid of any reference to party-notice of the news-report type, but they confirm the Commission's practice of serving all orders and decisions upon the affected litigants as well as making them available for public inspection.[31]
 
 
 10
 Section 2344 also specifies that a petition for review "shall contain a concise statement of . . . the grounds on which relief is sought,"[32] and that "(t)he petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency."[33] Compliance with the first of these requirements is apt to be exceedingly difficult, and of course with the second is impossible, unless the litigant is armed with the complete text of the decision and order which he desires a court to review.
 
 
 11
 In similar vein, Section 402(c) of the Communications Act[34] provides that appeals from Commission action in the special cases wherein an appeal rather than a petition for review is the vehicle for judicial reexamination[35] "shall be taken by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of."[36] Section 402(c) also provides, comparably with Section 2344, that the "notice of appeal shall contain a concise statement of the reasons on which the appellant intends to rely . . . ."[37] Thus, the statutory procedures for appeal, like those pertaining to review on petition, require a high degree of specificity in the legal arguments upon which the litigant will rely. We are unable to harmonize the requirement of argumentative particularity with the notion that the "public notice" of which the statute speaks is the abridged version which the Commission's Information Office hands out in advance of release of the decision or order in full.
 
 
 12
 That version, we are told, is nothing more than an unofficial, informal summary of forthcoming Commission action for the edification of the press and the general public. It is customarily prepared by non-lawyers in the press office; it is not approved by the Commission, nor is it served on the litigants,[38] but is simply made available on a first-come-first-served basis by the Information Office. In the case before us, the August 3 news report was a two-page typewritten condensation of the eleven-page typewritten opinion and order[39] in which the Commission elucidated its disposition of the petitions for rehearing. We cannot envision how preparation of a petition for review conforming to statutory requirements could responsibly be undertaken simply on the basis of such a report.[40]
 
 
 13
 We are mindful that the issue before us stems, not from an appeal but from a petition to review, and a petition which relates not to an original order but one which follows recourse to administrative reconsideration. Nonetheless, we think the considerations pointing to the construction properly to be placed on the term "public notice" are essentially the same in each instance. In each the need to ponder the text of the decision and order is pressing; in neither, absent full knowledge of the Commission's treatment of the arguments, can a party either confidently or competently supply a statement of the reasons upon which the case for judicial review will be rested. Moreover, the legislative scheme for review hardly tolerates different interpretations for the "public notice" demanded by Section 403(c) and that required by Section 405 companions in the same piece of legislation[41] nor does it even hint at a congressional purpose to foster the consequences which such a reading would make well nigh inevitable.
 
 
 14
 Judicial policy strongly favors cogent and thoughtful appeals. Only recently we voiced our disapproval of appeals taken without adequate reflection.[42] In order to prepare accurate and well formed petitions for review, we repeat, litigants must have recourse to complete statements of the decisions and orders which they undertake to challenge. At least as important as the outcome of the administrative proceeding is the course of reasoning by which the decision is reached; it is that the would-be petitioner or appellant must subject to the closest scrutiny. An interpretation of Section 405 which would measure the time for petitioning for review from the issuance of a summary news report would tend to generate time pressures conducive to the routine filing of protective petitions to safeguard interests which, as things turn out, may not be threatened by the decision at all.
 
 IV
 
 15
 Proceeding beyond relevant statutory language to its legislative history, we glean additional insight into the contemplated content of "public notice." We find no historical indication that this phraseology was intended to refer to an announcement of the sort furnished by the news report involved in this case.[43] We do find that, prior to reenactment of the pertinent statutes in their present form, the Commission had for administrative purposes defined "public notice" of its decisions in terms of making the decisions in full text public in its office and filing them in the dockets of the cases.[44] We further find that it was only after the Commission had thus refined its concept of "public notice" that Congress incorporated those words into its statutes.[45] These circumstances, we believe, bear some importance in this litigation.[46]
 
 
 16
 In the Communications Act of 1934 as originally written, the plan for judicial review of Commission action[47] differed in several respects from the scheme in vogue under present law. By Section 402(b), final action concerning construction permits and licenses for radio stations was, as now, reviewable on appeal to this court,[48] but by Section 402(a) other action was litigable only by suit in a three-judge district court.[49] Section 402(c) required an appeal to be taken "within twenty days after the decision complained of is effective,"[50] and further provided that "(u)nless a later date is specified by the Commission as a part of its decision, the decision complained of shall be considered to be effective as of the date on which public announcement of the decision is made at the office of the Commission in the city of Washington."[51] Similarly, by Section 405, an application for rehearing by the Commission of an order or decision pertaining to radio had to be made within "twenty days after the effective date thereof."[52] The Commission was later, in King Trendle Broadcasting Corporation,[53] to point out that "(a)lthough 'effective date' is not specifically defined in section 405 it is clear that the definition intended is that contained in the earlier section 402 . . . namely public notice at the office of the Commission. . . ."[54]
 
 
 17
 Prior to reenactment of Sections 402 and 405 in their present form, the Commission elaborated on its terminology. In 1949, the Commission revised its rules of practice[55] and in the process set forth its concept of "public notice" of its action. The rules delineated a decisional procedure by which the Commission would ordinarily issue a proposed decision and, after opportunity to the litigants to file exceptions and submit supporting argument, would then promulgate its final decision.[56] Section 1.851 of the rules provided that "(u)nless otherwise directed by the Commission the presiding (hearing) officer shall prepare a recommended decision . . . which shall be made public and filed in the docket of the case simultaneously with the issuance of the Commission's proposed decision."[57] Section 1.856 of the rules further provided that "(t)he requirements of § 1.851 shall apply to the final decision of the Commission. . . ."[58] Thus recommended decisions of presiding officers and Commission decisions, both proposed and final, were to "be made public and filed in the docket of the case." That, by the Commission's lights, was to be the content of "public announcement" and "public notice;" and we note particularly that what was to be given publicity was the decision itself obviously in full text.
 
 
 18
 It was by the Communications Act Amendments, in 1952,[59] only three years after formulation of these revised rules, that Congress rewrote Sections 402 and 405 to incorporate the present time-requirements for administrative and judicial reexamination of Commission action. A petition pursuant to Section 402(a) for judicial review, by then to be conducted in a court of appeals,[60] had to be filed "within sixty days after entry of" the order complained of.[61] A notice of appeal pursuant to Section 402(b) had to be filed "within thirty days from the date upon which public notice is given of the decision, or order complained of."[62] Petitions for rehearing by the Commission "must be filed within thirty days from the date upon which public notice is given of any decision, order, or requirement complained of."[63] And, "(t)he time within which a petition for review must be filed in a proceeding to which section 402(a) applies, or within which an appeal must be taken under section 402(b), shall be computed from the date upon which public notice is given of orders disposing of all petitions for rehearing filed in any case . . . ."[64]
 
 
 19
 We find nothing in the legislative history to suggest that Congress intended that the "public notice" which would actuate these periods could be a mere news summary emanating from the Commission's Information Office.[65] And while the history does not pinpoint the reason for congressional adoption of those words,[66] we think it significant that the Commission's rules of practice, interpreting statutory references to "effective date" and "public announcement" of a Commission action, had already specified that the decisions themselves would "be made public and filed in the docket of the case."[67] We do not say that the 1952 amendments of the Communications Act necessarily embraced a legislative ratification of the Commission's definition of "public notice."[68] We do say that in the circumstances we cannot gratuitously assume that when Congress spoke of "public notice" in its statutes, it had something radically different in mind.[69]
 
 V
 
 20
 To the statutory language,[70] its legislative history,[71] and the anomaly of an interpretation equating summary news reports with "public notice" of Commission orders and opinions,[72] we add lastly the Commission's construction of the statutory term "public notice" as reflected in its rules of practice.[73] Those rules, in respect pertinent to our inquiry, incorporate the thesis that "public notice" of adjudicative action is public release of the text of the adjudicatory document in its entirety.[74] That concept also emerges as the Commission's understanding of the "public notice" spoken of in the provisions of Section 405 currently governing administrative rehearings and subsequent judicial reviews.[75] In the undertaking to ascribe meaning to those words in the controversy now before us, the Commission's interpretation dissipates any doubt which other considerations may have left lingering.[76]
 
 
 21
 The Commission's practice rules provide that "(f)inal decisions of the Review Board, a commissioner, or panel of commissioners following review of an initial decision shall be effective 40 days after public release of the full text of such final decision."[77] Thus the event which actuates the period during which such decisions ripen into finality is not a news report but the release of the complete text to the general public. The rules further provide that "(n)on-hearing or interlocutory actions taken pursuant to delegated authority shall, unless otherwise ordered by the designated authority, be effective upon release of the document containing the full text of such action, or in the event such a document is not released, upon release of a public notice announcing the action in question."[78] Thus, even non-hearing interlocutory activity delineated in a decision designed to be released remains ineffective until its release in full text.
 
 
 22
 Even more significant is the construction which the Commission has placed on the term "public notice" in Section 405,[79] the section assuming the major role in this litigation. As we have seen, Section 405 authorizes an aggrieved or affected party to file a petition for a rehearing of action taken either by the Commission itself or by any delegated authority within the Commission;[80] but it mandates the filing of a petition for rehearing "within thirty days from the date upon which public notice is given of the order, decision, report or action complained of,"[81] and it specifies that the time within which a petition for judicial review must be filed "shall be computed from the date upon which public notice of orders disposing of all petitions for rehearing filed with the Commission in such proceeding or case."[82] In three of its rules of practice, the Commission has defined the statutory words "public notice" and has defined them uniformly for purposes of computing the period within which a petition for administrative rehearing must be presented. One rule, pertaining to Commission consideration of final action taken pursuant to delegated authority, requires the filing of "a petition for reconsideration or an application for review . . . within 30 days from the date of release of the document containing the full text of such action, or in case such document is not released, after release of a public notice announcing the action in question. . . . "[83] Another rule, governing reconsideration of final Commission action, specifies that a petition therefor "shall be filed within 30 days from the date of release of the document containing the full text of the action taken or, in case such document is not released, after release of a public notice announcing the action in question and served upon parties to the proceeding. . . . "[84] Still another rule, applicable generally, provides that "(w)hen a Commission Decision, Order, or Memorandum is involved, the first day to be counted is the day after the day on which the complete text of the document is released by the Commission," and that "(w)hen any other Commission action is involved, the first day to be counted is the day after the day on which the 'Public Notice' of the action is released by the Commission."[85]
 
 
 23
 Thus the Commission, in these rules, has done two things. First, it has distinguished, on the one hand, between action involving a decision, order or memorandum, which invariably are at some point to be released in entire text[86] and, on the other hand, action of a different type, as to which there may be no documentary release at all.[87] Second, in an administrative construction of the 30-day requirement of Section 405 for presentation of petitions for rehearing, it has consistently taken the "public notice" which starts the 30-day period to be the public release of the decision, order or memorandum in complete text.[88]
 
 
 24
 It is well settled that "(t)he interpretation expressly placed on a statute by those charged with its administration must be given weight by courts charged with the task of construing the statute."[89] To accept the agency's interpretation, "we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings."[90] On the contrary, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong."[91] Nowhere in our wide-ranging exploration of the historical origins of Section 405 have we found any persuasive indication that the Commission's reading of "public notice" is in error.[92] Its view that there is "public notice" of an order or memorandum opinion only when interested parties can gain access to its full text comports with pertinent legislative[93] and judicial[94] policy, and with common sense as well.
 
 
 25
 That is the interpretation which the Commission has placed specifically upon the language of Section 405, which grants it authority to entertain petitions for rehearing only when presented within a period commencing with "public notice" of the order sought to be reheard. It is, too, a definition of "public notice" to which the Commission has adhered for even longer than Section 405 has adopted the term.[95] We accept that definition as an authoritative administrative construction of the statute which levies the Commission's duties with respect to rehearings. In cooperation with other factors commanding our attention in the interpretative process,[96] we are led to the conclusion that the Commission's construction of the term "public notice," as used in Section 405 in relation to the time for applying for Commission rehearing, is correct. And in light of all relevant considerations, we cannot believe that Congress intended a different meaning for the identical words in that portion of Section 405 which pertains to the timing of petitions for judicial review.[97]
 
 
 26
 We hold, then, that the time for filing petitions for review of the final orders and decisions complained of began to run on the date the Commission publicly released in complete text the order and opinion denying the petitions for administrative rehearing. Petitioners filed their petitions for review within that period, and thereby summoned our jurisdiction to review.[98] It follows that AT&T's motion to dismiss must be denied.
 
 
 27
 Motion denied.
 
 
 
 [1]
 The fourth is the order denying rehearing. The petition also complains of two prior interlocutory orders. As to both of these matters, see note 7, infra
 
 
 [2]
 Discussed in Part II, infra
 
 
 [3]
 Quoted in relevant part infra note 19
 
 
 [4]
 See note 1, supra
 
 
 [5]
 American Tel. & Tel. Co., 38 F.C.C.2d 213 (1972), supplemented, 38 F.C.C.2d 492 (1972). The order first cited is also the subject of a petition to review in No. 73-1045, Nader v. FCC, with which the case at bar has been consolidated. The net effect of the motion to dismiss, if successful, would be to remove the instant case from the consolidated proceeding
 
 
 [6]
 American Tel. & Tel. Co., 38 F.C.C.2d 984 (1973)
 
 
 [7]
 American Tel. & Tel. Co., 42 F.C.C.2d 293 (1973). No copy of that order is attached to the petition, and AT&T argues that 28 U.S.C. § 2344 (1970), quoted in part infra note 16, required that that be done. Instead, there is appended a copy of another order, with an accompanying memorandum opinion, American Tel. & Tel. Co., 42 F.C.C.2d 302 (1973), which clarifies the scope and order of consideration of issues to be resolved in further proceedings. The respective adoption and release dates of the two orders are the same, and it is apparent that there has been a mixup, but for several reasons we deem it to be without consequence
 In the first place, the petition for review unmistakably identifies the order denying rehearing, rather than the procedural order, as the one referred to. We must disregard the procedural order not only on that account but also because it remains interlocutory and non-final. See 28 U.S.C. § 2342(1) (1970), quoted partially in text infra at note 13; Chicago & Southern Air Lines v. Waterman Steamship Corp., 333 U.S. 103, 112-13, 68 S.Ct. 431, 437, 92 L.Ed. 568, 576-77 (1948); Thermal Ecology Must Be Preserved v. AEC, 139 U.S.App.D.C. 366, 368, 433 F.2d 524, 526 (1970); Bethesda-Chevy Chase Broadcasters, Inc. v. FCC, 128 U.S.App.D.C. 185, 186, 385 F.2d 967, 968 (1967). And whatever the normal effect of noncompliance with the statutory directive, none can obtain where, as here, the order in question is not in any event susceptible to judicial review. It has long been settled that an order which merely denies rehearing of another order is not itself reviewable. Pfister v. Northern Illinois Fin. Corp., 317 U.S. 144, 149-50, 63 S.Ct. 133, 137, 87 L.Ed. 146, 151 (1942); Conboy v. First Nat'l Bank, 203 U.S. 141, 145, 27 S.Ct. 50, 52, 51 L.Ed. 128 (1906); Gersing v. Chafitz, 77 U.S.App.D.C. 38, 133 F.2d 384 (1942); Doyle v. District of Columbia, 45 App.D.C. 90, 92 (1916); Dante v. Bagby, 39 App.D.C. 516, 517-18 (1913); Swenk v. Nicholls, 39 App.D.C. 350, 352 (1912); Tubman v. Baltimore & O. R.R., 20 App.D.C. 541, 543 (1902); In re L. F. Grammes & Sons, Inc., 324 F.2d 675, 677 (3d Cir. 1963); Jones v. Thompson, 128 F.2d 888, 889 (8th Cir. 1942). As the Supreme Court said in Pfister,
 A refusal (upon application for rehearing) to modify the original order . . . requires the appeal to be from the original order, even though the time (for appeal) is counted from the later order refusing to modify the original. An appeal does not lie from the denial of a petition for rehearing.
 317 U.S. at 149-50, 63 S.Ct. at 137, 87 L.Ed. at 151. Here the only possible effect of the Commission's order denying rehearing was to toll the period for seeking judicial review. See Part II, infra.
 The petition also seeks review of two additional orders: American Tel. & Tel. Co., 27 F.C.C.2d 151 (1971) (launching rate investigation and specifying issues), and American Tel. & Tel. Co., 30 F.C.C.2d 503 (1971) (clarifying scope of issues in one phase). Admittedly, these orders were interlocutory, and their present reviewability depends both upon their relationship to final orders of which petitioners desire review, Frontier Broadcasting Co. v. United States, 105 U.S.App.D.C. 161, 164, 265 F.2d 353, 356 (1959); see also Spanish Int'l Broadcasting Co. v. FCC, 128 U.S.App.D.C. 93, 99, 385 F.2d 615, 621 (1967), and, of course, upon the timeliness of the petition to confer jurisdiction to review those final orders.
 
 
 [8]
 In using the word "decisions," we refer to any document accompanying a Commission order which explains the basis for its action, whether denominated a decision or a memorandum opinion
 
 
 [9]
 See also text infra at note 38
 
 
 [10]
 This requirement is discussed in Part II, infra
 
 
 [11]
 We limit our ruling to the single ground urged by the motion to dismiss, assuming, without deciding, that the orders in question are final in character. See, however, note 7, supra
 
 
 [12]
 See note 25, infra
 
 
 [13]
 Act of June 19, 1934, ch. 652, tit. IV, § 402(a), 48 Stat. 1093, as amended, 47 U.S.C. § 402(a) (1970). That section provides:
 Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 19A of Title 5.
 The legislation referred to in § 402(a) Chapter 19A of Title 5 was repealed on September 6, 1966, in the process of general revision of that title, by Pub.L. No. 89-554, § 8(a), 80 Stat. 632 (1966), and its now effective provisions are found in 28 U.S.C. § 2342(1) (1970), quoted in part supra in text.
 
 
 [14]
 Communications Act of 1934, § 402(a), as amended, 47 U.S.C. § 402(a) (1970), quoted supra note 13
 
 
 [15]
 "Jurisdiction is invoked by filing a petition as provided by section 2344 of this title." 28 U.S.C. § 2342 (1970). See note 16, infra
 
 
 [16]
 28 U.S.C. § 2344 (1970) in relevant part provides:
 On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States. The petition shall contain a concise statement of
 (1) the nature of the proceedings as to which review is sought;
 (2) the facts on which venue is based;
 (3) the grounds on which relief is sought; and
 (4) the relief prayed.
 The petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency. . . .
 
 
 [17]
 28 U.S.C. § 2344 (1970), quoted in part supra note 16
 
 
 [18]
 28 U.S.C. § 2344 (1970), quoted in part supra note 16
 
 
 [19]
 Communications Act of 1934, § 405, as amended, 47 U.S.C. § 405 (1970), which in relevant part provides:
 After an order, decision, report, or action has been made or taken in any proceeding by the Commission . . . any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for rehearing only to the authority making or taking the order, decision, report, or action; . . . . The Commission, or designated authority within the Commission, shall enter an order, with a concise statement of the reasons therefor, denying a petition for rehearing or granting such petition, in whole or in part, and ordering such further proceedings as may be appropriate . . . . The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, . . . shall be computed from the date upon which public notice is given of orders disposing of all petitions for rehearing filed with the Commission in such proceeding or case, but any order, decision, report, or action made or taken after such rehearing reversing, changing, or modifying the original order shall be subject to the same provisions with respect to rehearing as an original order.
 
 
 [20]
 Communications Act of 1934, § 405, as amended, 47 U.S.C. § 405 (1970), quoted in part supra note 19. See American Civil Liberties Union v. FCC, 158 U.S.App.D.C. 344, 345-46, 486 F.2d 411, 412-13 (1973); Spanish Int'l Broadcasting Co. v. FCC, supra note 7, 128 U.S.App.D.C. at 99, 385 F.2d at 627. For holdings prior to enactment of § 405 in its present form, see Albertson v. FCC, 87 U.S.App.D.C. 39, 40-42, 182 F.2d 397, 398-400 (1950); Southland Industries v. FCC, 69 App.D.C. 82, 99 F.2d 117 (1938); Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 285-87, 96 F.2d 554, 557-59, cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938). See also Wrather-Alvarez Broadcasting, Inc. v. FCC, 101 U.S.App.D.C. 324, 326-27, 248 F.2d 646, 648-49 (1957)
 
 
 [21]
 See notes 5-7, supra, and accompanying text
 
 
 [22]
 See note 19, supra
 
 
 [23]
 Compare, e. g., United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259, 262 (1960)
 
 
 [24]
 By reason of Fed.R.App.P. 26(b), we cannot "enlarge the time prescribed by law for filing a petition to enjoin, set aside, suspend, modify, enforce or otherwise review, or a notice of appeal from, an order of an administrative agency, board, commission or officer of the United States, except as specifically authorized by law."
 
 
 [25]
 The fact that the Commission supports the timeliness of the petition for review, see text supra at note 12, does not eliminate the issue, for consent does not confer jurisdiction not otherwise possessed. American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18, 71 S.Ct. 534, 542, 95 L.Ed. 702, 710 (1951); Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167, 60 S.Ct. 153, 154, 84 L.Ed. 167, 170 (1939); New York ex rel. Bryant v. Zimmerman, 278 U.S. 63, 66, 49 S.Ct. 61, 63, 73 L.Ed. 184, 186 (1928); People's Bank v. Calhoun, 102 U.S. 256, 260-61, 26 L.Ed. 101, 102 (1880); Woodmen of the World Life Ins. Ass'n v. FCC, 69 U.S.App.D.C. 87, 88, 90 F.2d 122, 123 (1938)
 
 
 [26]
 See Parts III-V, infra
 
 
 [27]
 28 U.S.C. § 2344 (1970), quoted in part supra note 16
 
 
 [28]
 See note 16, supra
 
 
 [29]
 See note 16, supra
 
 
 [30]
 Even if not served on litigants, decisions and orders given "publication" in the Commission's records, unlike news reports, afford the opportunity to ascertain exactly what the Commission has said in regard to the litigation
 
 
 [31]
 "All opinions and orders of the Commission (including concurring and dissenting opinions) are "nailed (sic ) to the parties and, as part of the record, are available for inspection in accordance with §§ 0.453 and 0.455." 47 C.F.R. § 0.445(a) (1973). The sections referred to prescribe the locations of the public records
 
 
 [32]
 See note 16, supra
 
 
 [33]
 See note 16, supra
 
 
 [34]
 As amended, 47 U.S.C. § 402(c) (1970), quoted infra note 36
 
 
 [35]
 See text supra at note 14
 
 
 [36]
 "Such appeal shall be taken by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of. Such notice of appeal shall contain a concise statement of the nature of the proceedings as to which the appeal is taken; a concise statement of the reasons on which the appellant intends to rely, separately stated and numbered; and proof of service of a true copy of said notice and statement upon the Commission." Communications Act of 1934, § 402(c), as amended, 47 U.S.C. § 402(c) (1970). Emphasis in the text excerpt is, of course, supplied
 
 
 [37]
 See note 36, supra
 
 
 [38]
 The Commonwealth of Pennsylvania, an intervenor herein, informs us that only upon receipt of a copy of the motion to dismiss did it become aware either of the news report or the practice of the Commission's Information Office of issuing such reports
 
 
 [39]
 Nine pages in the printed report
 
 
 [40]
 We were confronted with a somewhat similar situation in Medical Comm. for Human Rights v. SEC, 139 U.S.App.D.C. 226, 432 F.2d 659 (1970), judgment vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). The informal administrative decision there sought to be reviewed was reached on March 24, 1969, and on the same day the petitioner was given some notification of it by telephone. No written information concerning the opinion was forthcoming, however, until a letter was mailed on April 2, and the agency did not make a copy of the minutes of the decision available until approximately four weeks after petitioner requested it. The governing statute required the filing of a petition for review within sixty days after entry of an agency order, and a regulation of the agency specified that its orders would be available for inspection after the date of entry. The petition for review in question was not filed until May 29 sixty days after the entry date, and the contention was that the telephone call activated the 60-day period with the result that the petition was untimely. In rejecting that argument, we noted that the regulation "evidences an attempt by Congress and the Commission to strike a balance between the need to have Commission orders operate with finality, and the aggrieved party's need to have both adequate notice of the substance of the decision, and sufficient time to prepare his petition." Id. at 232, 432 F.2d at 665. We pointed out that "(t)o hold that the running of the 60-day period can be initiated by a mere telephone call, as the Commission urges, would create risk of inequity and hardship to aggrieved parties and defeat the goal of orderly and open administrative procedures embodied in the" regulation. Id
 
 
 [41]
 "(T)here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204, 1207 (1932). See also Pampanga Sugar Mills v. Trinidad, 279 U.S. 211, 218, 49 S.Ct. 308, 310, 73 L.Ed. 665, 668 (1929); Fleming v. Moberly Milk Prods. Co., 82 U.S.App.D.C. 16, 24, 160 F.2d 259, 267, cert. dismissed, 331 U.S. 786, 67 S.Ct. 1304, 91 L.Ed. 1816 (1947)
 
 
 [42]
 Saturn Airways, Inc. v. CAB, 155 U.S.App.D.C. 151, 154, 476 F.2d 907, 910 (1973)
 
 
 [43]
 See text infra following note 54
 
 
 [44]
 See text infra at notes 55-58
 
 
 [45]
 See text infra at notes 59-64
 
 
 [46]
 See text infra at notes 66-67
 
 
 [47]
 Act of June 19, 1934, ch. 652, tit. IV, 48 Stat. 1092
 
 
 [48]
 48 Stat. 1093 (1934)
 
 
 [49]
 Id
 
 
 [50]
 Id
 
 
 [51]
 Id. (emphasis supplied)
 
 
 [52]
 Id. at 1095
 
 
 [53]
 13 F.C.C. 81 (1948)
 
 
 [54]
 Id. at 82 (emphasis supplied). See also West Allice Broadcasting Co., 12 F.C.C. 900 (1948)
 
 
 [55]
 F.C.C. General Rules of Practice and Procedure, §§ 1.701 to 1.896, 14 Fed.Reg. 769-76 (1949)
 
 
 [56]
 F.C.C. General Rules of Practice and Procedure, §§ 1.851 to 1.856, 14 Fed.Reg. 774 (1949)
 
 
 [57]
 14 Fed.Reg. 774 (1949) (emphasis supplied)
 
 
 [58]
 Id
 
 
 [59]
 Act of July 16, 1952, ch. 879, 66 Stat. 711
 
 
 [60]
 The transfer of jurisdiction of § 402(a) reviews from three-judge district courts to courts of appeals was accomplished by the Act of December 29, 1950, ch. 1189, 64 Stat. 1129
 
 
 [61]
 Act of Dec. 29, 1950, ch. 1189, § 4, 64 Stat. 1130, formerly codified at 5 U.S.C. § 1034 (1964). See note 13, supra
 
 
 [62]
 Act of July 16, 1952, ch. 879, § 402(c), 66 Stat. 719, 47 U.S.C. § 402(c) (1970) (emphasis supplied)
 
 
 [63]
 Act of July 16, 1952, ch. 879, § 405, 66 Stat. 720, as amended, 47 U.S.C. § 405 (1970) (emphasis supplied)
 
 
 [64]
 Id. (emphasis supplied)
 
 
 [65]
 See note 66, infra
 
 
 [66]
 When the bill which eventuated into the Communications Act Amendments, 1952, was reported by the Senate Committee on Interstate and Foreign Commerce, and when it was originally passed by the Senate, it provided that "(p)etitions for rehearing must be filed within thirty days from the entry of any decision, order, or requirement complained of," and that "(t)he time within which an appeal must be taken under section 402(b) hereof shall be computed from the date upon which orders are entered disposing of all petitions for rehearing filed in any case. . . . " S.Rep.No.44, 82nd Cong., 1st Sess. 26 (1951); 97 Cong.Rec. 964 (1951) (emphasis supplied). The bill also cleared the House Committee on Interstate and Foreign Commerce in language identical in these respects. H.R.Rep.No.1750, 82nd Cong., 2d Sess. 32-33, U.S.Code Cong. & Admin.News 1952, p. 2234. In its report, however, the House Committee stated that by reason of the bill's proposed modification of § 405, "petitions for rehearing may be filed in all cases within 30 days from the date upon which public notice is given of the decision, order, or requirement complained of." Id. at 18, U.S.Code Cong. & Admin.News 1952, p. 2252 (emphasis supplied). This might be taken as an indication that the Committee saw no difference between "entry" and "public notice;" in other words, that each would involve a full textual release. See also text supra at note 51. The debates preceding House passage and Senate repassage of the bill, 98 Cong.Rec. 7389-421, 8906, 9022-29 (1952), do not identify any other reason for the preference of "public notice" in the legislation as finally enacted
 
 
 [67]
 See text supra at notes 56-59
 
 
 [68]
 See, e. g., Commissioner of Internal Revenue v. Noel's Estate, 380 U.S. 678, 680-82, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159, 162 (1965); United States v. Zazove, 334 U.S. 602, 620-24, 68 S.Ct. 1284, 1292-94, 92 L.Ed. 1601, 1612-14 (1948); Great N. R.R. v. United States, 315 U.S. 262, 275-77, 62 S.Ct. 529, 534-35, 86 L.Ed. 836, 843-44 (1942); Thompson v. Clifford, 132 U.S.App.D.C. 351, 361, 408 F.2d 154, 164 (1968)
 
 
 [69]
 As the Senate Committee on Interstate and Foreign Commerce stated, the 1952 amendments of the Communications Act were "the end product of more than a decade of congressional investigations, studies, hearings, and reports by committees in both Houses of Congress." S.Rep.No.44, 82nd Cong., 1st Sess. 2 (1951). The amendments themselves attest a meticulous and comprehensive revision of the Communications Act. See 98 Cong.Rec. 7404-21 (1952). The effort extended to an overhaul of the machinery for judicial review, S.Rep.No.44, 82nd Cong., 1st Sess. 11-12 (1951); H.R.Rep.No.1750, 82nd Cong., 2d Sess. 18 (1952); the changes contemplated were carefully explained. See S.Rep.No.44, 82nd Cong., 1st Sess. 11-12 (1951); and a stated objective was to "eliminate uncertainty existing under present law as to the time within which judicial review must be sought under section 402 in cases where petitions for rehearing are filed with the Commission." H.R.Rep.No.1750, 82nd Cong., 2d Sess. 18 (1952), U.S.Code Cong. & Admin.News 1952, p. 2252. We are unwilling to assume that without any explanation whatever Congress would have taken the unusual step of substituting an informal news report for the Commission's practice of full textual release of decisions and orders as the event triggering the statutory period for seeking judicial review
 
 
 [70]
 See Part III, supra
 
 
 [71]
 See Part IV, supra
 
 
 [72]
 See Part III, supra
 
 
 [73]
 The topic of discussion here differs from that in Part IV, supra. There we referred to the Commission's definition of "public notice" incidental to its construction of "effective date" in legislation which preceded the recasting of § 405 in its present form. That, we said, was a factor militating against the conclusion that Congress intended a different definition when it amended § 405. Here we deal with the Commission's interpretation of the words "public notice" after Congress wrote them into § 405 an administrative construction of language of the current statute which is crucial to the jurisdiction of this case
 
 
 [74]
 See text infra at notes 77-78
 
 
 [75]
 See text infra at notes 79-87
 
 
 [76]
 See text infra at notes 89-97
 
 
 [77]
 47 C.F.R. § 1.102(a)(1) (1973)
 
 
 [78]
 47 C.F.R. § 1.102(b)(1) (1973)
 
 
 [79]
 47 U.S.C. § 405 (1970), quoted in part supra note 19
 
 
 [80]
 See note 19, supra
 
 
 [81]
 See note 19, supra
 
 
 [82]
 See note 19, supra
 
 
 [83]
 47 C.F.R. § 1.104(b) (1973)
 
 
 [84]
 47 C.F.R. § 1.106(f) (1973)
 
 
 [85]
 47 C.F.R. § 1.4(b) (1973)
 
 
 [86]
 See text supra at notes 77, 85, and note 31, supra
 
 
 [87]
 See text supra at notes 78, 83, 84
 
 
 [88]
 See text supra at notes 83-85
 
 
 [89]
 Zemel v. Rusk, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179, 187 (1965). Accord, Investment Co. Institute v. Camp, 401 U.S. 617, 626-27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367, 376 (1971); Griggs v. Duke Power Co., 401 U.S. 424, 433-34, 91 S.Ct. 849, 854-55, 28 L.Ed.2d 158, 165 (1971); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, 807 (1933)
 
 
 [90]
 Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 251, 91 L.Ed. 136, 145 (1946). Accord, Udall v. Tallman, supra note 89, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625
 
 
 [91]
 Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). Accord, New York State Dept. of Social Serv. v. Dublino, 413 U.S. 405, 521, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); Columbia Broadcasting Sys. v. Democratic Nat'l Comm., 412 U.S. 94, 121, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 199, 75 S.Ct. 229, 99 L.Ed. 246 (1955); Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948)
 
 
 [92]
 The record does not disclose how long the Commission's Information Office has been issuing news reports in advance of release of the texts of its decisions and orders. We note, however, that, as a random inspection of the Commission's published reports reveals, only over the period of the last four years has the Commission indulged the practice of adopting decisions and orders on one date and releasing them to the public at a somewhat later date
 
 
 [93]
 See Parts III, IV, supra
 
 
 [94]
 See Part III, supra
 
 
 [95]
 See note 7, supra
 
 
 [96]
 See Parts III, IV, supra
 
 
 [97]
 See cases cited supra note 41
 
 
 [98]
 See note 7, supra