609 F.2d 20
 13 ERC 1984, 197 U.S.App.D.C. 254, 9
Envtl. L. Rep. 20,753
 AMERICAN PETROLEUM INSTITUTE, Petitioner,*
v.
Douglas M. COSTLE, Administrator, and Environmental
Protection Agency, Respondents,*
American Petroleum Institute and 15 of its member companies,
Chemical Manufacturers Association, The St. Louis Regional
Commerce & Growth Association, Natural Resources Defense
Council, et al., The State of Oklahoma, E.I. Du Pont De
Nemours & Co., Intervenors.
 No. 79-1104.
 United States Court of Appeals,
District of Columbia Circuit.
 Nov. 6, 1979.
 
 Edward W. Warren, Robert F. Van Voorhees, John S. Hahn, Washington, D.C., Robert R. Bonzcek, Bernard J. Reilly, Carl B. Everett, Wilmington, Del., John H. Pickering, Andrew T. A. Macdonald and David R. Johnson, Washington, D.C., were on the motion to correct the record for petitioners American Petroleum Institute, et al. in Nos. 79-1104, 79-1201, 79-1222, 79-1290, 79-1359 and 79-1370 and intervenors in Nos. 79-1335, 79-1356 and 79-1362.
 Patrick J. Cafferty, Jr., Atty., Dept. of Justice, Washington, D.C., was on the opposition to motion to correct the record for respondent Environmental Protection Agency.
 Richard E. Ayres, Washington, D.C., and David D. Doniger, Washington, D.C., were on the opposition to motion to correct the record for intervenor National Resources Defense Council, et al. in No. 79-1104 and petitioner in Nos. 79-1335 and 79-1362.
 Joseph J. Brecher, Boulder, Colo., and Peter J. Herzberg, Trenton, N.J., entered appearances for petitioner Sierra Club in No. 79-1356.
 Frederick S. Fisher, III, James E. Ryan, Jr. and Roger L. Chaffe, Richmond, Va., entered appearances for petitioner Commonwealth of Virginia, et al. in No. 79-1365.
 Daniel Joseph and Courtenay Ellis, Washington, D.C., entered appearances for petitioner City of Houston, Texas in No. 79-1367.
 Jeffrey O. Cerar, Atty., Environmental Protection Agency, Washington, D.C., entered an appearance for respondents.
 Christopher S. Bond, Kansas City, Mo., and Charles A. Blackmar, Jefferson City, Mo., entered appearances for intervenor The St. Louis Regional Commerce, et al. in No. 79-1104.
 Charles S. Rogers, Asst. Atty. Gen., for the State of Oklahoma, Oklahoma City, Okl., entered an appearance for intervenor State of Oklahoma ex rel. George Nigh, etc. in No. 79-1104.
 Before McGOWAN,** LEVENTHAL and WALD, Circuit Judges.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 This motion to correct the record is part of an action challenging the primary and secondary national ambient air quality standards for ozone, recently promulgated by the Environmental Protection Agency (EPA) and published at 44 Fed.Reg. 8202, February 8, 1979. The standards are challenged by a group of industry petitioners,[1] who contend that the standards are unrealistically strict, and by a group of environmentalist and health petitioners,[2] who contend that they are not strict enough. This opinion concerns one of several motions by the parties to supplement or correct the record. We do not intimate any views as to the merits of the case.
 
 I. BACKGROUND
 
 2
 The industry petitioners have moved that this court order the EPA to remove from the record for judicial review certain documents placed in the record after the Administrator publicly signed and announced the ozone standards on January 26, 1979, but before they were published in the Federal Register on February 8, 1979. They contend that these materials[3] were included in the record in contravention of the record-compilation requirements of Section 305(a) of the Clean Air Act Amendments of 1977, Pub.L. No. 95-95, 91 Stat. 685, 772-776. These amendments added a new Section 307(d) to the Clean Air Act, 42 U.S.C. § 7607(d) (Supp. I 1977).
 
 
 3
 The purpose of the amendments was to facilitate judicial review by defining "what the record for a rule consists of, and how and when material must be placed in the record." H.R.Rep. No. 294, 95th Cong., 1st Sess. 318, 319 (1977), U.S.Code Cong. & Admin.News 1977, pp. 1077, 1398. The statute requires the inclusion of some materials, and the exclusion of others, so that the record for judicial review will comprise only those materials directly pertinent to the agency's decision. In summary, it requires the EPA to compile a docket on or before the date a proposed rule is published in the Federal Register. The materials in the docket must be open to public inspection until the final rule is promulgated, and, with one exception,[4] they become the record for judicial review after such promulgation. The docket must include the proposed rule, a statement of its basis and purpose (including a summary of the factual data on which the proposed rule is based, the methodology used with the respect to those data, and the major legal interpretations and policy considerations underlying the rule), all comments written by the public and submitted during the comment period, a transcript of any public hearing on the proposed rule, the text of the final rule, a statement of the basis and purpose of the final rule, an explanation of major changes from the proposed rule, and a response to every major comment, criticism, and new datum submitted during the comment period.
 
 
 4
 In addition, the EPA may supplement the docket with any public comments received after the comment period or other document that becomes available after publication of the proposed rule. These additional materials may be added to the docket if the Administrator determines they are "of central relevance to the rulemaking." The statute requires that such materials, as well as comments submitted during the comment period, be placed in the docket "as soon as possible after their availability." Section 307(d)(4)(B)(i), 42 U.S.C. § 7607(d)(4)(B)(i) (Supp. I 1977).
 
 
 5
 In addition, the statute provides: "The promulgated rule may not be based (in part or whole) on any information or data which has not been placed in the docket as of the date of such promulgation." Section 307(d)(6)(C), 42 U.S.C. § 7607(d)(6)(C) (Supp. I 1977). All the parties to this case agree that this means that no additional materials other than those Required by the statute and wrongfully omitted by the EPA may be added to the docket after the rule is promulgated. The record presented to the court on a petition for review thus consists of materials required by the statute to be included in the docket supplemented by materials "of central importance to the rulemaking" placed in the docket prior to promulgation of the rule.
 
 
 6
 We do not decide in this opinion whether other materials not specified by the statute to be included in the record, but necessary for the court to make a complete review of the decision, may be included in a supplemental record for judicial review. All we decide today is when the "date of such promulgation" occurs for purposes of the record cut-off of Section 307(d)(6)(C).
 
 II. ANALYSIS
 
 7
 The issue in this case is whether the "date of such promulgation" means the date that the rule is signed and distributed to the press and public, or the date that the rule is published in the Federal Register. The word "promulgation" is not defined in the statute, nor is there an explicit definition in the legislative history. Both sides seek to bolster their arguments by reference to a 1977 amendment to another section of the Clean Air Act, Section 307(b)(1). The 1970 version read:Any such petition (for review) shall be filed within 30 days from the date of such promulgation or approval, or after such date if such petition is based solely on grounds arising after such 30th day.
 
 As amended, Section 307(b)(1)[5] reads:
 
 8
 Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register * * * .
 
 
 9
 The House Report concerning amendments to this section, H.R.Rep. No. 294, 95th Cong., 1st Sess. 322 (1977), explains that this change was intended to make clear that the time for filing a petition for review begins to run from the time of publication in the Federal Register, rather than from the date the Administrator signs the rule and transmits it for publication.
 
 
 10
 The EPA and the environmentalist petitioners contend that this change shows that Congress meant by "date of such promulgation" the date of publication in the Register. In contrast, the industry petitioners contend that Congress has deliberately created a distinction between the date of "promulgation" and the date of publication in the Register. Although the industry petitioners' argument seems somewhat the stronger, we are not willing to decide this issue on so flimsy an indication of congressional intent.
 
 
 11
 The statute must be interpreted in accordance with its context and purpose. This has been the course followed by this court in the past in deciding when "promulgation" or "issuance" of a rule occurs. See, e. g., Industrial Union Dept. v. Bingham, 187 U.S.App.D.C. 56, 570 F.2d 965 (D.C. Cir. 1977); Microwave Communications, Inc. v. FCC, 169 U.S.App.D.C. 154, 515 F.2d 385 (D.C. Cir. 1974); Saturn Airways, Inc. v. CAB, 155 U.S.App.D.C. 151, 476 F.2d 907 (D.C. Cir. 1973). The main purpose of the record cut-off provision of Section 307(d)(6)(C) was to ensure that the rulemaking process would be reviewed on the basis of data and reasoning that were available to EPA at the time the decision was being made and that were deemed important at that time. Pedersen, Formal Records and Informal Rulemaking, 85 Yale L.J. 38, 74-78 (1975).[6]
 
 
 12
 By requiring that the record be in final form when the rule is promulgated, the statute promotes policies that are vital to effective judicial review and long recognized by this and other courts. If all materials relevant to the decision are placed in a publicly available docket promptly upon their receipt by the EPA rather than assembled after the decisionmaking process is completed then interested parties will be able to examine them and respond to them. See Portland Cement Association v. Ruckleshaus, 158 U.S.App.D.C. 308, 486 F.2d 375 (D.C. Cir. 1973), Cert. denied, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). Moreover, the creation of a precisely defined and closed administrative record makes it more likely that the agency's decision will be based on the materials in that record, and explained by the agency at the time of promulgation. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); International Harvester Co. v. Ruckleshaus, 155 U.S.App.D.C. 411, 478 F.2d 615, 632 (D.C. Cir. 1973); Pedersen, supra, at 73-74. The agency will not be tempted to shore up inadequately justified positions by adding Post hoc rationalizations to the record, nor will it assume at the time it promulgates a rule that there will be an opportunity afterwards to improve the record. In sum, the statute promotes public participation in rulemaking, reasoned decisionmaking based on the record, and judicial review of the agency decision based on the data and reasoning before the agency at the time the decision was made.
 
 
 13
 These considerations lead to the conclusion that "the date of such promulgation" in Section 307(d)(6)(C) means the date that the rule is signed and released to the public. At that time, the agency's decision is fixed, and no additional data or arguments will change it.[7] After that date, no materials added to the docket could be examined by any members of the public; there would be no opportunity for agency lawyers to insert supportive documents into the record.
 
 
 14
 The EPA has argued that adoption of the date of publication in the Federal Register as the date of promulgation would "allow( ) EPA flexibility to review the documents that were placed in the docket to ensure that all documents which are required by statute to be in the docket have in fact been placed there." Memorandum of Respondents in Opposition to Motion to Correct Record and Motion to Supplement Record at 21. This argument must be rejected. As to documents required by the statute to be included in the record, EPA may indeed, must place them in the record when they are available.[8] As to other documents, the purpose of the statute is to Eliminate the flexibility of the EPA to add such documents after the decision has been made. If EPA wants a document to be considered on judicial review, it must place the document in the rulemaking docket, open to the public, before the rule is signed and announced.
 
 
 15
 The industry petitioners' motion to correct the record by the removal from the record of document Nos. IIA-B-1 through 5, IIB-E-7, IV-G-40 through 55, and IV-G-58 through 61, is granted.
 
 
 16
 So ordered.
 
 
 
 *
 Consolidated with the following cases (identified by this Circuit's case number and petitioner), in all of which the Environmental Protection Agency is the respondent: No. 79-1201, E. I. Du Pont De Nemours and Company; No. 79-1222, American Petroleum Institute, et al.; No. 79-1290, Chemical Manufacturers Association; No. 79-1335, The Natural Resources Defense Council, Inc., et al.; No. 79-1356, Sierra Club; No. 79-1359, Chemical Manufacturers Association, et al.; No. 79-1362, The Connecticut Lung Association, Inc.; No. 79-1365, Commonwealth of Virginia, ex rel., The State Air Pollution Control Board; No. 79-1367, City of Houston, Texas; No. 79-1370, American Petroleum Institute, et al
 
 
 **
 Circuit Judge McGowan did not participate in this decision
 
 
 [1]
 The industry petitioners are American Petroleum Institute and its member companies, Manufacturing Chemists Association and its member companies, and E. I. duPont de Nemours & Co
 
 
 [2]
 The environmentalist petitioners are the National Resources Defense Council, Sierra Club, American Lung Association, Delaware Valley Citizens' Committee for Clean Air, and Connecticut Lung Association
 
 
 [3]
 The documents at issue are: document Nos. IIA-B-1 through 5 ("Studies or Contractor Reports" prepared on various dates, placed in docket on February 6, 1979, concerning health effects or eye irritation from ozone, photochemical air pollution, and other substances); IIB-E-7 (a comment written after the comment period by Roger Randolph of the Tulsa City-County Health Dept. concerning the calibration issue, one of many comments on the subject, placed in docket on January 31, 1979); and IV-G-40 through 55, and 58 through 61 (comments from the public on the ozone standards, written after the close of the comment period, and docketed after January 25, 1979). The EPA neither referred to nor apparently relied upon those documents in reaching its decision
 
 
 [4]
 Documents generated by the review of the rule by the Office of Management and Budget and other federal agencies must be available to the public in the rulemaking docket, but they are excluded from the record for judicial review. Section 607(d)(7)(A), 42 U.S.C. § 7607(d)(7)(A) (Supp. I 1977)
 
 
 [5]
 Now codified at 42 U.S.C. § 7607(b)(1) (Supp. I 1977)
 
 
 [6]
 The article by William F. Pedersen, Jr., an attorney in the Office of General Counsel of the EPA, may be taken as an authoritative guide to congressional intent in enacting the record provisions of Section 307(d). The House Report on the 1977 amendments to the Clean Air Act states: "By and large, this section (307(d)) represents a legislative adoption of the suggestions for a rulemaking record set forth in a law review article dealing with EPA (citing Pedersen )." H.R.Rep. No. 294, 95th Cong., 1st Sess. 319 (1977), U.S.Code Cong. & Admin.News p. 1398
 
 
 [7]
 In this case, the ozone standards were announced to the press and public, and widely distributed in written form to any interested parties. If, as in Industrial Union Dept. v. Bingham, 187 U.S.App.D.C. 56, 570 F.2d 965 (D.C. Cir. 1977), the decision, after being signed, were released only to a few selected members of the public, other considerations might be present
 
 
 [8]
 If they are erroneously omitted, the agency may follow a reasonable procedure to supplement the record