GAS APPLIANCE MANUFACTURERS ASSOCIATION, INC., et al., Plaintiffs,

v.

SECRETARY OF ENERGY, Defendant.

Civ. A. No. 89–1315.

United States District Court, District of Columbia.

Oct. 6, 1989.

Robert A. Burka, David W. Brown, Washington, D.C., Joseph M. Mattingly, Arlington, Va., for plaintiffs.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs Gas Appliance Manufacturers Association ("GAMA"), a trade association representing almost 100 percent of U.S. manufacturers of water heaters, and six individual manufacturers attack an Interim Rule issued by the Secretary of Energy. The rule establishes efficiency standards for water heaters to be used in new federal government construction. These requirements are a minuscule part of a comprehensive regulation setting efficiency standards for numerous components of federal buildings. GAMA contends that the water heater regulations mandate a small increase in energy efficiency that is not cost-effective because excessive capital expenses would be required to develop water heaters that comply. In support of this position, GAMA notes that the Secretary wholly failed to address its objections in the rulemaking proceeding and relied on outside studies without stating any reasons for adopting the conclusions of those studies in the face of factual, informed objections. The Secretary disputes GAMA's claims.

The issues are before the Court on the relevant administrative rulemaking record and cross-motions for summary judgment which have been fully briefed and argued.

## I

The challenged portion of the Interim Rule, which was published January 30, 1989 at 54 Fed.Reg. 4538, is found in Section 9.3.2 and part of Table 9.3–1. Under this DOE Interim Rule, within 180 days of the July 31, 1989, effective date, federal agencies must design all future federal commercial and multi-family high rise residential buildings in accordance with the standards. The standards are mandatory only for federal buildings, but the Secretary is recommending that states and manufacturers follow suit, and GAMA argues that these other sectors will respond to this recommendation. The potential injury to GAMA's member firms is substantial if the challenged rule is upheld.

The Court has jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. sections 553, 701 *et seq.* Under the APA, the Court must set aside agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.[1] The scope of review under this standard is narrow and a court should not substitute its judgment for the agency's; nevertheless, the agency must demonstrate a rational connection between the facts found and the decision made. *Motor Vehicle Manufacturers Association v. State Farm Mutual Insurance Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

## II

The relevant material facts are not in dispute.

The DOE Interim Rule carried out a statutory mandate to set minimum performance criteria for most aspects of energy use in federal buildings found in the Energy Conservation Standards For New Buildings Act of 1976, 42 U.S.C. § 6833. After some delays and amendments to the Act,

---

1. An interim rule is reviewable as a final agency action. *See, e.g., Mid-Tex Electric Cooperative, Inc. v. FERC,* 822 F.2d 1123 (D.C.Cir.1987). GAMA asserts, and DOE does not dispute that a February 1989 letter it sent to DOE constitutes a petition for amendment and repeal of a final rule as required by the APA and that DOE's failure to respond prior to the filing of this litigation in May 1989 constituted the required denial of the petition.

DOE moved forward with an effort that culminated in the 1989 Interim Rule.

The portion of the regulations at issue here set "standby loss requirements" for gas, oil and electric commercial storage water heaters, i.e. efficiency standards for the loss of heat experienced by a water heater while holding heated water not immediately being drawn down.

Since 1983, the Secretary has relied heavily on standards developed under the auspices of the American Society of Heating, Refrigerating and Air–Conditioning Engineers, Inc. ("ASHRAE"). The standby loss requirements at issue here were first published in a 1987 Proposed Interim Rule. They were explicitly based on new energy performance standards developed and proposed by the ASHRAE Standing Standard Project Committee ("the ASHRAE committee"), which since 1984 had been conducting research on energy performance standards on a parallel track and in close cooperation with DOE. The new standards under attack in this case are more stringent than previous standards proposed by either DOE or ASHRAE.

GAMA filed written comments with DOE criticizing the standby loss criteria of the Proposed Interim Rule and testified at one of the three public hearings DOE held on the rule. In its written comments, GAMA stated:

> The standby loss requirements proposed in Table 9.3–1 for commercial water heaters are far too stringent. Neither DOE nor ASHRAE has analyzed the practical or economic impact of these proposed standards. GAMA knows of no currently available commercial water heaters that would comply with these requirements.

The comments went on to discuss briefly the difficulties in meeting the new requirements for electric, gas and oil commercial storage water heaters. GAMA was the only group or individual to submit comments on the proposed water heater standby loss standards.[2]

Apparently, DOE never contacted GAMA to discuss GAMA's objections. The 1989 Interim Rule adopted the standby loss standards of the Proposed Interim Rule without change.

### III

GAMA never provided DOE with a detailed critique of the new standby loss standards or with a detailed argument for adopting an alternative standard, but that fact does not relieve DOE of its specific statutory duties with respect to justifying the new standards. Congress mandated, at section 501(b)(1) of the Department of Energy Organization Act, 42 U.S.C. § 7191, that the Secretary of Energy, in promulgating energy standards, must include a statement of "the research, analysis and other available information in support of, the need for, and the probable effect of any such proposed rule, regulation or order" and to include "an explanation responding to the major comments, criticisms, and alternatives offered during the comment period." Section 310 of the Act, 42 U.S.C. § 6839, specifically provides that such standards must be "adequately analyzed in terms of energy efficiency, ... economic cost and benefit, and impact on affected groups." In addition, section 302(b)(2), 42 U.S.C. § 6831(b)(2), requires DOE "to achieve the maximum practicable improvements in energy efficiency." With respect to the disputed standby loss criteria, DOE paid insufficient attention to these statutory mandates. The word "practicable" in section 302(b)(2) reinforces the requirement of section 310 that DOE take into account cost-benefit and constituency concerns and not simply sacrifice all other concerns to any reductions in energy use. Increased energy efficiency must be weighed against potential increases in overall dollar costs arising from new standards under some articulated formula.

The Interim Rule, commenting on all of the many standards contained therein, not specifically on the standby loss criteria,

---

**2.** GAMA's comments on less stringent 1983 DOE proposed standby loss standards, like GAMA's comments on the 1987 standards, were the only comments on standby loss, were critical of the standards, and were left unaddressed by DOE.

parrots the statutory language in stating that the standards are "designed to achieve maximum practicable improvements in energy efficiency." 54 Fed.Reg. at 4540. The Interim Rule also states that the various standards will "produce more energy efficient and cost-effective ... buildings."

■ However, there is only one brief paragraph in the 183–page Interim Rule and accompanying comments that addresses the water heater standby loss issue and GAMA's comments:

> DOE received a comment that the standby loss requirements in Table 9.3–1 for residential oil water heaters are far too stringent.
>
> *DOE Response:* Current research results indicate that the levels of stringency are well below the current state-of-the-art, that substantial improvement in efficiency can be made, and that the efficiency requirements of the interim standards are defensible.

DOE states that this provision is meant to address GAMA's concerns about commercial as well as residential water heaters and asserts that the inclusion of the word "residential" was inadvertent. DOE's explanation, if accepted, reveals its lack of focus on the standby loss requirements and lack of compliance with the Administrative Procedure Act. The sentence is conclusory and vague and therefore insufficient to justify the rule. The origin of the sentence appears to have been an August 1987 reply from a member of the ASHRAE committee responding to GAMA's critique of the ASHRAE committee standby loss standards; that reply stated in part:

> Current research results show that the proposed levels of stringency are well below the state of the art of what can be produced in commercial water heaters given sufficient lead time 1992 [sic]....
> In general, the Committee believes that substantial improvement can be made, and that the proposed efficiency requirements are defensible.

■ DOE now belatedly asserts that studies not in the formal rulemaking record were influential in the development of the standby loss standards. Although a court,

in reviewing an agency decision, may consider extra-record materials if they were before the decisionmaker at the time of the decision, *see, e.g., Walter O. Boswell Hospital v. Heckler,* 749 F.2d 788, 793 (D.C. Cir.1984), there is a dispute as to whether these documents were before the Secretary when he approved the standby loss criteria. However, this dispute need not be settled for summary judgment purposes, because, in any event, it is clear that DOE's failure to put these studies in the public record denied GAMA any opportunity to comment on DOE's reliance on them. Moreover, at oral argument, DOE was unable to point to a specific study—either in the formal rulemaking record or in the supplementary materials DOE submitted to the Court for purposes of this litigation—that demonstrated that the Interim Rule's standby loss criteria were practicable or economically efficient.

### IV

■ The Interim Rule does refer to the ASHRAE proposed standard (Standard 90.-1P) on which the DOE standby loss criteria are based and notes the close cooperation between ASHRAE and DOE. 54 Federal Register at 4540. The standards proposed by the ASHRAE committee were approved by the ASHRAE Standards Committee and the ASHRAE Board of Directors in 1989. Because the Court finds that DOE did not adopt the standby loss standards based on evidence in the record, it must consider whether DOE's mention of its cooperation with the ASHRAE committee standing alone suffices to justify the rule. The Court concludes that mention of cooperation with ASHRAE did not provide adequate justification for the rule.

■ In the first place, an agency cannot simply adopt the conclusions of a private group without disclosing and providing a meaningful opportunity for comment on that decision. Assuming *arguendo* that DOE could delegate to ASHRAE the task of determining appropriate energy standards which the DOE would subsequently adopt without undertaking independent technical analyses, DOE nevertheless could

not do so without so announcing and considering objections from the public. DOE did not make such an announcement here.

Second, the record does not show that the ASHRAE committee, in developing its standby loss criteria, paid close heed to the mandate Congress had set down for DOE, i.e. that the standards were "practicable" and justifiable in terms of economic cost and benefit and impact on affected groups. It is conceivable that ASHRAE focused on whether the standards were feasible, i.e. technically possible to achieve, without regard for economic cost and benefit. It is also possible that the constituencies represented on the ASHRAE committee had economic interests diverging from those of some or all of the GAMA members. For example, ASHRAE may have been focused on the feasibility and efficiency of the standards for gas water heaters and ignored the interests of makers of electric water heaters; GAMA claims that while gas heaters could, with cost increases, be designed to meet the disputed standards, electric heaters apparently could not achieve the standards at any reasonable cost.

■ Third, although GAMA served on the ASHRAE committee's advisory group and commented on three drafts of the committee's proposed standards, this participation did not satisfy DOE's obligation to put the studies on which it relied in the record or to respond publicly and specifically to GAMA's still unanswered objections, nor did it render harmless DOE's apparent failure to do so. GAMA's knowledge of what studies the ASHRAE committee was considering was not tantamount to knowledge of what studies DOE was going to adopt; indeed, GAMA has presented evidence suggesting that ASHRAE and DOE each relied in part on studies not relied on by the other. Thus GAMA's awareness of what information was before the committee did not satisfy the requirement that it be aware of what information was before DOE and that it have an opportunity to comment on that information.

Fourth, if, as it appears from the record, DOE largely relied on ASHRAE's expertise instead of coming to its own conclusion as to the practicability of the standards, it failed to look at the fine print. The ASHRAE committee envisioned that a 1992 voluntary implementation date for the standby loss criteria; DOE put the standards into effect on July 31 of this year for full implementation as of January 1990. GAMA contends that a standard practicable three years hence is not necessarily practicable immediately. There is no indication from the record that DOE ever independently attempted to verify the feasibility of implementing the standards prior to 1992.

In sum, DOE has failed to justify the disputed standby loss criteria on the basis of the rulemaking record and has therefore flunked the APA test of *Motor Vehicle Manufacturers Association* and related cases. Just as clearly, DOE has failed to satisfy Congress's specific mandates that it justify its rules in terms of cost efficiency and respond to criticisms of such rules.

DOE asks the Court to ignore these failures, citing language of prior opinions to the effect that the Court is required to uphold an agency decision so long as the agency's path to that decision can reasonably be discerned. *See, e.g., Motor Vehicle Manufacturers Association,* 463 U.S. at 43, 103 S.Ct. at 2866; *Miller v. Lehman,* 801 F.2d 492, 497 (D.C.Cir.1986). DOE's argument evinces insufficient regard for the specific statutory requirements Congress has imposed on DOE in justifying its rule.

## V

GAMA asks the Court to vacate the Interim Rule's standby loss criteria, but vacatur is inappropriate under these circumstances. Vacatur is the correct remedy where fundamental deficiencies in the rulemaking raise doubts about whether the agency chose properly from the various policy options. *United Mine Workers v. Dole,* 870 F.2d 662 (D.C.Cir.1989). The Court will not vacate where the agency may have made a rational choice but failed fully to satisfy rulemaking standards. It may well be that the ASHRAE standards, developed after a lengthy process involving

ASHRAE, DOE and GAMA, can be shown to meet the statutory requirements of practicability and economic efficiency. It may even be that analysis conducted independently by DOE, taking into account GAMA's objections, came to that conclusion, because a declaration filed by a DOE official suggests that DOE is aware of and has a substantive response to GAMA's critiques.

However, in light of DOE's failure adequately to justify its standby loss criteria on the record and the fact that the law does not favor agency decisions made on the basis of documents not in the public rulemaking record, *see, eg., American Petroleum Institute v. Costle*, 609 F.2d 20 (D.C. Cir.1979), the Court enjoins DOE from proceeding with enforcement of the water heater criteria pending a reconsideration, consistent with this Memorandum, of the provisions on remand.

The Court remands section 9.3.2 and the portions of table 9.3–1 dealing with "Minimum Performance (Loss)" for electric, gas and oil storage water heaters to DOE, which must provide a statement of reasons for adoption of standby loss criteria, with attention to the relevant statutory requirements, including those dealing with practicability, cost-benefit analysis, and impact on affected groups. DOE must also place in the public rulemaking record all of the materials on which it now relies in determining the water heater criteria it adopts on remand. DOE shall publish its statement in the *Federal Register* by November 30, 1989, make the materials upon which it relies available by that date, and invite all interested participants to comment by January 15, 1990. Plaintiffs shall file their response or responses with DOE by the January 15 date. DOE shall publish by February 15, 1990, in the *Federal Register* a statement responding to plaintiffs' critique and any others, again with reference to the statutory requirements and announcing appropriate standby loss criteria.

Until this process has been completed, DOE will be enjoined from taking any public action to enforce the requirements of section 9.3.2 and the relevant portion of table 9.3–1. This permanent injunction shall extend only to section 9.3.2 and the portions of table 9.3–1 dealing with "Minimum Performance (Loss)" for electric, gas and oil storage water heaters, and not to any other provision of the Interim Rule.

An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of the cross-motions and the entire record herein and for the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that plaintiffs' motion for summary judgment is granted; and it is further

ORDERED that the Secretary of Energy's motion to dismiss or for summary judgment is denied; and it is further

ORDERED that the portions of table 9.3–1 dealing with "Minimum Performance (Loss)" for electric, gas and oil storage water heaters and section 9.3.2 of the Department of Energy Interim Rule published January 30, 1989, at 54 Fed.Reg. 4538, are remanded to the Department of Energy for proceedings in accordance with the Court's Memorandum: the Secretary of Energy shall publish in the *Federal Register* by November 31, 1989, a statement as described in the Memorandum, plaintiffs shall respond by January 15, 1990, and the Secretary of Energy shall publish in the *Federal Register* a reply by February 15, 1990; and it is further

ORDERED that the Secretary of Energy is enjoined from taking any public action to enforce the requirements of section 9.3.2 and the above-mentioned portions of Table 9.3–1, pending completion of the remand.